IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| GREGORY G.,[1] | No. 6:24-cv-01521-JR |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

     Plaintiff Gregory G. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits under the Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final orders and judgement in this case in

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). ECF No. 1. For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Born in July 1978, plaintiff alleges disability beginning October 1, 2018. Tr. 231-32. Plaintiff alleged disability due a variety of conditions, including issues with his gall bladder, degenerative disc disease, leg pain, anxiety, and depression. Tr. 232. His application was denied initially and upon reconsideration. Tr. 328-32, 339-41. On November 21, 2019, he appeared without representation at a hearing before Administrative Law Judge ("ALJ") Katherine Weatherly. Tr. 206-28. On February 14, 2020, she issued a decision finding him not disabled. Tr. 279-94. On October 20, 2020, the Appeals Council remanded the case because: 1) plaintiff was not proffered all the exhibits, 2) there was inconsistency between the mental impairments found by ALJ Weatherly and her Residual Functional Capacity ("RFC") assessment, and 3) the ALJ did not address a third-party function report. Tr. 296-7.

On February 10, 2021, plaintiff appeared at a second administrative hearing before ALJ Steve Lynch. This time, plaintiff was represented by his caregiver/fiancée, who was "not a professional representative." Tr. 195-205, 679, 1460. On June 15, 2021, plaintiff appeared before ALJ Lynch for a supplemental hearing, this time represented by an attorney. Tr. 168-94. On June 28, 2021, ALJ Lynch issued a decision finding plaintiff not disabled. Tr. 300-21. On June 9, 2022, the Appeals Council vacated this decision and remanded the case again. Tr. 324. The Appeals Council remanded because the ALJ "did not consider the claimant's need for assistive device in finding that the claimant can perform a range of light work." Tr. 324.

On June 14, 2023, plaintiff appeared and testified with counsel at another administrative hearing before ALJ John Sullivan. Tr. 135-67. On August 9, 2023, the ALJ issued a decision

finding plaintiff not disabled. Tr. 13-63. On July 11, 2024, the Appeals Council denied plaintiff's request for review, so he filed a complaint in this court. Tr. 1-7.

## THE ALJ'S FINDINGS

Initially, the ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2023. Tr. 19. At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 1, 2018, the alleged onset date. Tr. 19. At step two, the ALJ determined the following impairments were medically determinable and severe: degenerative disc disease of the lumbar spine, cervical degenerative disc disease, and thyroid cancer. Tr. 19. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 21.

Because plaintiff did not establish presumptive disability during the relevant period at step three, the ALJ continued to evaluate how his impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except "he can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can occasionally stoop, crouch, kneel, and crawl." Tr. 22.

At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. Tr. 27. At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that plaintiff could perform, such as ticket seller, storage facility rental clerk, and parking lot attendant. Tr. 27-28. The ALJ therefore found plaintiff not disabled from October 1, 2018, through the date of the decision. Tr. 28.

DISCUSSION

Plaintiff argues the ALJ committed three harmful errors. He contends the ALJ erred by (1) discounting his testimony without a clear and convincing reason for doing so, (2) disregarding lay witness testimony without providing a germane reason, and (3) improperly evaluating the medical opinions of Dr. Olivia M. Danforth, M.D. For the reasons that follow, the Court finds the ALJ erred, reverses, and remands for further proceedings.

I.    **Symptom Testimony**

Plaintiff contends the ALJ erred by discrediting his testimony about the extent of his physical limitations. Pl.'s Br., ECF No. 9 at 13-18. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL

5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff identifies several aspects of his testimony—consistently raised since the first administrative hearing in December 2018—that he believes the ALJ erroneously discounted. Specifically, plaintiff testified that although he has good days and bad days, on bad days due to pain he needs to switch positions frequently, and he rarely leaves home. Plaintiff testified: that on bad days he "can hardly get out of bed, can't sleep, can't sit or stand very long or legs go numb, hurts to sit," that he "can't get comfortable hurts all the time," that he can sit "about five minutes and then it starts hurting," that he'll try playing video games with his sons "for a little bit until I start hurting, and then just move on to something else," that he doesn't have very much energy, and although his fiancée "is always trying to get me up and trying to get me out of the room ... there's days where I just don't feel like doing anything." He shared that he has bad days "probably four out of seven days" and he leaves his home "in a month's time, maybe three, four times." Tr. 140-1, 179-84, 222, 621-3.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 22. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 22. Specifically, the ALJ found plaintiff's symptom allegations were inconsistent with objective medical evidence, and his daily activities. Tr. 22-24.

The ALJ failed to identify objective medical evidence that directly conflicted with plaintiff's testimony about limitations stemming from his foot, leg, and back pain, so did not offer a clear and convincing reason for discounting it. Conflict with objective medical evidence can be a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). The ALJ found that plaintiff's "[p]hysical, musculoskeletal and neurological examinations have varied, but generally revealed some surgical scarring on the neck, tenderness to palpation, with some back spasms, pain with axial loading, a variable gait, four-five out of five muscle strength with some breakaway, variable balance, and variable muscle tone." Tr. 23-4. He did not explain why this would undermine plaintiff's testimony that he needs to switch positions frequently and on bad days can "barely get out of bed." Tr. 140-1, 179-84, 222, 621-3. The ALJ then asserted that despite allegations of weakness, plaintiff's "physical examinations have demonstrated five out of five muscle strength until only recently." Tr. 24. These records establish that plaintiff has a baseline of strength and flexibility but say nothing about the amount of pain plaintiff suffers and fail to account for other medical records showing plaintiff's strength was "severely limited." *See* Tr. 179-84, 961, 971. The bulk of plaintiff's testimony described the difficulties he suffers as a result of pain, which does not conflict with the muscle strength, range of motion, and coordination data the ALJ cited. *See* Tr. 23-24 (citing, e.g., Tr. 746-47). Because the evidence the ALJ cited did not conflict with plaintiff's symptom testimony this was not a clear and convincing reason for the ALJ to discount plaintiff's allegations.

The ALJ also erred by discounting plaintiff's symptom testimony because it conflicted with purportedly "conservative" treatment. Tr. 24. A lack of evidence of treatment in the record can support an ALJ's decision to discount testimony because the claimant's underlying treatment

was conservative. *See Woods v. Kijakazi*, 32 F. 4th 785, 794 (9th Cir. 2022) (affirming ALJ's discounting of subjective testimony based on "very conservative" treatment). The ALJ highlighted the fact that plaintiff treated his pain with medication, acupuncture, heat, massage, physical and occupational therapy, and steroids, concluding that this treatment was "conservative," and undermined plaintiff's testimony that his symptoms were more limiting. Tr. 24. The record says otherwise. This plaintiff consistently sought medical treatment for years for chronic, severe pain. He worked with medical providers to obtain more significant procedures, but referrals were denied, or he was deemed not a good candidate for surgery. Tr. 1157-72, 1351. Plaintiff followed his medical providers recommendations but failed to find any relief. Tr. 1014. Following a medical provider's recommendations cannot be considered conservative treatment when no other treatment options are offered. *See, e.g., Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1210 (D. Or. 2019) ("Because the ALJ did not specify what 'more aggressive treatment options [were] appropriate or available,' it would be illogical to discredit plaintiff 'for failing to pursue non-conservative treatment options where none exist.' "). Nor did the ALJ specify what more significant treatment plaintiff should have sought. Tr. 24. In sum, the ALJ erred by discounting plaintiff's pain testimony because his course of treatment for pain was supposedly conservative.

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with his statements about daily activities. Tr. 23-25. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when

7 – OPINION & ORDER

evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to credibility).

The ALJ also failed to identify transferable work skills or contradictory testimony in plaintiff's daily activities, so did not provide a clear and convincing reason to discount plaintiff's testimony on this basis. In his decision, the ALJ found that plaintiff "could perform adequate self-care, care for his pets, engage in hobbies, do household chores, and go out to the store." Tr. 24-5. The ALJ also cited medical evidence from November 2020, where plaintiff reported he could "walk uphill daily, climb a flight of stairs, and ride his motorcycle, and help his mom with his stepdad who is a paraplegic." Tr. 24-5. Finally, the ALJ discounted plaintiff's testimony because "the record demonstrates inconsistent use of his walker." Tr. 24. But these modest activities do not undermine plaintiff's testimony about his need to frequently change position or inability to leave home, particularly where he testified, he has bad days "probably four out of seven days." *Id.*, Tr. 184, 621-2. As plaintiff indicated, he can perform an activity like "folding" in short spurts, but even minor exertion leaves him very fatigued afterwards, and does not conflict with his testimony about his need to change positions. Tr. 621-24. Nor do these activities substantiate an ability to sustain competitive employment over an 8-hour day and 40-hour work

week. Accordingly, plaintiff's daily activities were not a clear and convincing reason to discount his testimony.

Ultimately, the ALJ erred in rejecting plaintiff's subjective symptom testimony because he failed to provide specific, clear, and convincing reasons as to why his testimony contradicted, or was undermined by, the objective medical record and his activities of daily living.

## II.   Medical Opinion Evidence

Plaintiff also argues the ALJ did not properly consider Dr. Olivia M. Danforth, M.D.'s medical opinion. Pl. Br, ECF No. 8 at 3-13. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

9 – OPINION & ORDER

Dr. Olivia Danforth became plaintiff's primary treating physician in early 2021. Tr. 1268-70. In June 2021, she provided an assessment indicating that due to "progressively worsening back pain & related functional impairment" as well as "easy fatiguability related to pain and mechanical disadvantage," plaintiff needs to "lie down or rest periodically during the day" and she anticipated that his medical problems would prevent him from being able to maintain a regular work schedule "[m]ore than 4 days per month." Tr. 1268-70. Two years later, in May 2023, having continued as his primary treating physician throughout this time, she reviewed and confirmed her attestation of June 2021, and, citing "a repeated MRI in November 2021 [that] demonstrated severe disc desiccation w/height loss at L5-S1," assessed that he "continued to experience declines in his functional status" such that he "has become reliant on the use of a walker and electric wheelchair," and he "experiences daily pain, instability, weakness and impaired mobility that restrict him in safely completing many activities of daily living." Tr. 1467.

The ALJ considered Dr. Danforth's medical opinion and rejected it as unpersuasive for four reasons. Tr. 26. First, because she began treating plaintiff in early 2021, she had a limited basis for her opinion on the claimant's functioning;" second, because although she "observed antalgic gait in appointments," she "did not observe significant pain behavior;" third, she "prescribed relatively routine treatment for back pain;" and fourth, her charts did not reflect severe impairments. Tr. 26.

The ALJ failed to identify substantial evidence to find Dr. Danforth's opinions unpersuasive for lack of supportability. Tr. 25. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ discounted Dr. Danforth's opinion because it was not supported by a long treatment history or her own treatment records. Tr. 25. The ALJ started by noting that Dr. Danforth had only seen plaintiff twice before offering her June 2021 opinion. Tr. 26, 1255. The ALJ overlooks key aspects of Dr. Danforth's opinion, however. Although Dr. Danforth had only seen plaintiff twice before her 2021 opinion, she relied on years of medical data to support her conclusions, which the Commissioner does not dispute. Tr. 26, 1269. And more significantly, Dr. Danforth reaffirmed her 2021 opinion in an updated letter in May 2023, noting that plaintiff's condition had worsened in those two years. Tr. 1467-68. The ALJ also discounted Dr. Danforth's opinions because they conflicted with the routine treatment she prescribed for plaintiff. For example, the ALJ observed that, while Dr. Danforth noted an antalgic gait, she prescribed relatively routine treatment for plaintiff's back pain (such as pain medication and physical therapy) and did not record significant pain behavior on clinical examination. Tr. 26. This is not substantial evidence either. As noted above, plaintiff's treatment was not "conservative," and references to plaintiff's pain and limited mobility in the record are extensive. *See, e.g.,* Tr. 941-44. Ultimately, the ALJ failed to identify substantial evidence to support his conclusion that Dr. Danforth's opinion was unpersuasive for lack of support in the record.[2]

The ALJ also failed to sufficiently consider the consistency of Dr. Danforth's opinions with the overall medical record. The consistency factor requires the ALJ to assess medical

---

[2] The Commissioner also argues that Dr. Danforth's May 2023 assessment "relied on plaintiff's subjectively reported symptoms rather than objective findings." Def.'s Br. at 4. The ALJ made this finding specifically in regard to "[t]he added limitations" of "arthritis in his hands and fingers," which are not at issue here. Tr. 26. To the extent the Commissioner raises this in defense of the ALJ's analysis of plaintiff's pain and mobility allegations, this is an impermissible *post hoc* rationalization, which the Court may not consider on appeal. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009).

11 – OPINION & ORDER

opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ cited some aspects of the medical record purportedly in conflict with Dr. Danforth's opinion, such as "the 2019 MRI showing a relatively mild spinal disorder," "observations of no more than mild weakness in the legs," "low frequency of reported symptoms in 2020," and "lack of observations by providers of poor energy." Tr. 26. These medical records do not actually conflict with Dr. Danforth's opinions, however, so are not substantial evidence the ALJ may rely on to find them unpersuasive. For example, although the ALJ describes the 2019 MRI as reflecting a "mild spinal disorder," orthopedic surgeons that reviewed the MRI described "severe disc degenerative change at L5-S1," which "is likely the cause of [plaintiff's] chronic low back pain." Tr. 1157. Concerning evidence of strength, as noted above, plaintiff's limitations are due to significant pain and fatigue, rather than a lack of strength. *See* Tr. 1268-69. Nor does the ALJ's reliance on "lack of symptoms in 2020" and "lack of observations of poor energy" do justice to the record, which reflects significant evidence of low energy and poor mobility in 2020 and throughout the relevant period. *See, e.g.*, Tr. 1181-89. Finally, the ALJ also failed to discuss the inconsistencies between the much more significant limitations in Dr. Danforth's opinion (which he found unpersuasive), with the limitations from Dr. Kwock and the state agency physicians' opinions (which he found persuasive). Tr. 26. In sum, the ALJ did not adequately consider significant objective evidence or the overlap between Dr. Danforth's opinion and other medical opinions in the record, and therefore failed to sufficiently assess the consistency of her opinions with the evidence from other medical or nonmedical sources.

**III.    Lay Witness Testimony**

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).[3]

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

---

[3] The Court notes that this issue is currently under consideration in the Ninth Circuit. *See Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. March 7, 2025) (vacated and withdrawn, 2025 WL 1024393, at *1 (9th Cir. Apr. 7, 2025). Unless and until the Ninth Circuit provides contrary, binding guidance on the interpretation of the 2017 regulations, the Court will continue to require ALJs to state a germane reason for disregarding lay witness testimony. *Valentine*, 574 F.3d at 694.

The ALJ did not rely on substantial evidence when disregarding the lay witness testimony in this case, and therefore erred. The ALJ found that the lay observations were consistent with plaintiff's allegations but disregarded them as "unpersuasive based on their inconsistency with specific evidence." Tr. 26. The written decision does not identify the "specific evidence" however, or the purported inconsistencies with the record. Tr. 26. As discussed above, the ALJ failed to supply legally sufficient reasons for rejecting plaintiff's subjective complaints, and these same rationales do not support the decision to discount the lay witness testimony. The ALJ erred in rejecting the lay testimony in this case. *Garrison*, 759 F.3d at 1020-23.

IV.     **Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The Court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the

record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Defendant committed harmful error by failing to provide clear and convincing reasons to discount plaintiff's symptom testimony, erroneously evaluating the medical evidence, and disregarding the lay witness testimony without stating a germane reason. There remain ambiguities and conflicts in the record for the ALJ to resolve, however, specifically conflicts between medical opinions of Dr. Danforth and other providers in the record. The Commissioner's decision is reversed, and this case is remanded for further proceedings so that the ALJ can properly consider plaintiff's testimony, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, the Commissioner's decision is reversed and remanded for further proceedings.

IT IS SO ORDERED.

DATED this 21st day of May, 2025.

    /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge